**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **GREGORY WALLACE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | No.   **3:17-CV-0487-GCS** |
| | ) | |
| **NICOLAS LAMB,** | ) | |
| **LIEUTENANT MATTHEW** | ) | |
| **MCCARTHY,** | ) | |
| **LIEUTENAT JOHN BACH,** | ) | |
| **LIEUTANANT EARL DIXON, and** | ) | |
| **DEE DEE BROOKHART,** | ) | |
| | ) | |
| **Defendants.** | | |

**<u>MEMORANDUM and ORDER</u>**

**SISON, Magistrate Judge:**

**INTRODUCTION**

Before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Nicolas Lamb, Matthew McCarthy, John Bach, Earl Dixon and Dee Dee Brookhart. (Doc. 95, 96). Specifically, Defendants argue that Plaintiff Gregory Wallace failed to exhaust his administrative remedies because he did not indicate any action or inaction on the part of any Defendants named herein in his filed grievances, nor did he exhaust his administrative remedies as to all of the claims alleged in his third amended complaint. Wallace, by and through Court assigned counsel, opposes the motion arguing that he properly filed his grievance on April 20, 2017 with

Page **1** of **11**

the Administrative Review Board ("ARB"), that same day he was transferred out of Lawrence Correctional Center ("Lawrence") to the Cook County Jail, and that the ARB never responded to his grievance. (Doc. 101).

On May 28, 2020, the Court held a hearing on the summary judgment motion, heard testimony from Wallace, heard arguments from the parties and took the matter under advisement. (Doc. 105). Based on the following reasons, the undersigned **DENIES** the motion for summary judgment on the issue of exhaustion of administrative remedies.

Pursuant to 42 U.S.C. § 1983, Wallace filed a complaint for deprivations of his constitutional rights that occurred while he was housed at Lawrence. (Doc. 1). On January 18, 2018, Wallace filed a second amended complaint. (Doc. 30). He brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Illinois negligence law. In his second amended complaint, Wallace alleges that officials at Lawrence refused to recognize a medical permit he was issued for a low bunk and low gallery permit in April 2017. (Doc. 30, p. 1-6). As a result, Wallace sustained injuries when he fell down the prison's stairs. *Id*. He was denied medical care, as well as access to other prison programs and services. *Id*. Wallace named Lamb, then Lawrence's warden, and several unknown correctional officers (C/O John Doe Nos. 1-3) as defendants. *Id*. He seeks monetary damages against them. (Doc. 30, p. 3-4, 6).

After the Court conducted the 28 U.S.C. § 1915A review, the following claims survived:

**Count 1** - Eighth Amendment deliberate indifference claim against the John Doe Defendants for denying Plaintiff a low bunk in a low gallery, failing to adequately treat the injuries he sustained from falling down the prison's stairs, and denying him use of a wheelchair, crutches, or ADA van.

**Count 2** - ADA and/or RA claim against Lamb, in his official capacity as warden, for failing to accommodate Plaintiff's disability by providing him with a low bunk on a low gallery, forcing him to use stairs, and denying him use of a wheelchair, crutches, or ADA van.

**Count 3** - Illinois negligence claim against all Defendants for the conduct described in the second amended complaint.

(Doc. 30). Thereafter, Wallace filed a third amended complaint substituting McCarthy, Dixon, and Bach as Defendants for the John Doe Defendants. The third amended complaint contains the same claims as the second amended complaint. On November 20, 2019, pursuant to Federal Rule of Civil Procedure 25(d), the Court substituted Brookhart, in her official capacity as acting Warden of Lawrence, as a Defendant only in Count 2 of Wallace's third amended complaint for Lamb, in his official capacity as former Warden of Lawrence. (Doc. 78).

## FACTS

The following facts are taken from the record and presented in the light most favorable to Wallace, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStanfano*, 557 U.S. 557, 586 (2009).

Wallace is an inmate within the Illinois Department of Corrections ("IDOC") and currently housed at Pinckneyville Correctional Center ("Pinckneyville"). In April 2017, Defendants McCarthy, Dixon and Bach were all Lieutenants at Lawrence. At the time of

the allegations in the complaint, Wallace was housed at Lawrence. On April 18, 2017, Wallace fell down a flight of stairs and then was sent to an outside hospital. On April 20, 2017, Wallace, while housed at Stateville Correctional Center ("Stateville"), filed a grievance regarding this incident and sent the grievance directly to the ARB.[1] This grievance alleged that Wallace's low bunk/low gallery permit was not honored at Lawrence. Regarding the nature of the grievance, Wallace marked medical treatment and staff conduct, but he did not mark ADA disability accommodation. The ARB received the grievance on April 25, 2017.

Wallace was discharged from the IDOC custody on April 20, 2017, and on May 1, 2017, Wallace, while incarcerated at the Cook County jail, filed this lawsuit.

Wallace testified that he was generally aware of the grievance process at Lawrence. He also testified that because he is not good at reading, he had an inmate help him prepare his April 20, 2017 grievance. He states that he never heard back from the ARB after he filed the grievance. He further testified that there were no names in his April 20, 2017 grievance because he did not know the names of the officers involved in the incident. However, he did testify that he was aware that the different levels of officers at Lawrence

---

[1]     Wallace did not return to Lawrence after he was sent to the outside hospital; instead he was transferred to Stateville.

wore different colored uniforms. For example, lieutenants wore white, correctional officers wore blue, and the wardens typically wore street clothes.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and

the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following sequence and procedures to be followed:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the IDOC, Wallace was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance

procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, the inmate can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved

to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures further allow some grievances to be submitted directly to the ARB for consideration. *See* 20 ILL. ADMIN. CODE § 504.870(a). Those grievances include:

1) Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2) Decisions regarding the involuntary administration of psychotropic medication.

3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.

4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

20 ILL. ADMIN. CODE § 504.870(a)(1-4).

## ANALYSIS

Defendants argue they are entitled to summary judgment because Wallace failed to exhaust his administrative remedies as he did not indicate any action or inaction on the part of any Defendants named herein in his filed grievances, nor did he exhaust his administrative remedies as to all of the claims alleged in his Third Amended Complaint.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned finds Defendants have not met their burden and that Wallace did exhaust his claim as to all defendants. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013)(noting that district court dismissed section 1983 claims against certain defendants where such defendants were neither mentioned by name or inference in the grievance). *But see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n. 1 (7th Cir. Feb. 6, 2014)(noting that "an inmate need not name the defendants in his grievance if, . . . , the grievance form asks only for a brief summary of the grievance."). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford

correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005)(citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, the undersigned finds that Wallace provided enough information to put the prison officials at Lawrence on notice of the nature of his Eighth Amendment claim, ADA claim and his negligence claims. Specifically, in his grievance, Wallace stated as follows:

> was given a low gallery and bottom bunk permit because of a gunshot wound to my legs. As a result I am forced to walk on crutches. Against the orders of the Medical Staff I was placed in cell uper[sic] 13 on the 2nd gallery and told correctional officers about my low gallery and bottom bunk permit as it was evident by my crutches that I could barely walk up the stairs. Then on 4-18-17 I was going to the shower and fell down the stairs and was taken to Lawrence Co. Memorial Hospital.

(Doc. 96-1, p. 19-20). The aforementioned grievance, while slim, provides enough detail to inform the prison officials of the nature of Wallace's claims, to inform the prison officials that correctional staff was involved in denying his medical permits, and to inform the prison officials of the approximate date and time frame surrounding his claims. It would be a small matter for the facility to check its work records to determine who was working on the days in question for the specific cell and areas identified by

Wallace in his grievance. Additionally, despite not checking the ADA box, the ADA claim can clearly arise out of the facts contained in the grievance because it can be inferred that Wallace was disabled as he was on crutches, he was allegedly provided a low gallery and low bunk permit, the correctional facility failed to accommodate and honor his permits by housing him in an upper gallery/cell, and he fell down the stairs while on his crutches as a result.

Furthermore, the Court finds that Wallace did not need to and could not do anything more to pursue the grievance process as the ARB never responded to his grievance. Clearly, he followed the grievance procedures by submitting the grievance directly to the ARB, as he was required to do because he was no longer housed in the facility (Lawrence) where the alleged incident took place. Defendants even concede that Wallace correctly filed the grievance with the ARB in this motion. Wallace was not required to do more. Thus, the Court finds that Wallace fully exhausted his administrative grievances.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 95).

**IT IS SO ORDERED.**

**Date:  June 11, 2020.**

Digitally signed
by Judge Sison
Date: 2020.06.11
15:05:36 -05'00'

_____

**HON. GILBERT C. SISON**
**United States Magistrate Judge**